**Robert DIPOL, Plaintiff,**

**v.**

**The NEW YORK CITY TRANSIT AUTHORITY, Defendant.**

**No. 94 CV 696(SJ).**

United States District Court,
E.D. New York.

March 30, 1998.

Paul L. Dashefsky, Smithtown, NY, for plaintiff.

New York City Transit Authority, General Counsel by Martin B. Schnabel, Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

JOHNSON, District Judge.

Robert DiPol ("DiPol" or "Plaintiff") filed the present action under the "Americans with Disabilities Act" (the "ADA"), 42 U.S.C. §§ 12101, *et seq.* and New York state law against the New York City Transit Authority ("Defendant" or the "NYCTA"). Before this Court is Plaintiff's motion for partial summary judgment against Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure on Plaintiff's ADA claim. According to Plaintiff, the material facts in this case are not in dispute and constitute proof of discrimination under the ADA, thus warranting a judgment as a matter of law on such claim. For the reasons stated below, Plaintiff's motion is granted.

## BACKGROUND

Plaintiff has been an employee of the NYCTA since November 4, 1991. (Pl.'s Amended 3(g) Statement ¶ 1). Between No-

vember 4, 1991 and July 1993, Plaintiff held the occupational title of "Power Distributor Maintainer's Helper." *Id.* In addition, Plaintiff was promoted to the position of "Power Distributor Maintainer" between late 1993 and early 1994. (Deposition of Frank Asnes, "Asnes, Dep." at 17).

For approximately 40 years, including the period of Plaintiff's employment with the NYCTA, Plaintiff has had a diabetic condition. (Affidavit of Paul L. Dashefsky, Esq. "Dashefsky Aff." ¶ 5). Despite this condition, Plaintiff contends that his job performance was always evaluated as satisfactory by Frank Asnes, one of Plaintiff 5 supervisors, and that Asnes never found the Plaintiff to pose or create any risk at his job or to his co-workers. *Id.* at ¶ 8(b).

In July 1993, Plaintiff applied for a commercial driver's license in connection with a particular promotional opportunity sought by Plaintiff with the NYCTA. *Id.* at ¶ 6. Pursuant to NYCTA regulations, in order to obtain such a license, applicants must submit to a physical examination with the NYCTA. (Pl.'s Amended 3(g) Statement ¶ 5). Upon examination of Plaintiff at pre-employment, it was observed that Plaintiff was in poor control of his diabetes and that there was a problem with his vision. (Deposition of Michelle Alexander, "Alexander Dep." at 27). Without any further information on Plaintiff's condition, Defendant placed Plaintiff on a "no-work" status on July 13, 1993. *Id.*

One week later, on July 20, 1993, NYCTA physician Michelle Alexander assessed that, although Plaintiff could work, his duties should be restricted as a result of his diabetic condition. *Id.* at 28. Such restrictions were placed on Plaintiff by Defendant without any knowledge of whether he displayed any symptoms which have and/or might affect his job performance. *Id.* at 30. Dr. Alexander contends that Plaintiff had to be placed on restricted duty until further medical information could be obtained about him. *Id.* at 33.

Thereafter, in August of 1993, Plaintiff was examined by NYCTA physician Alan Genser who found that Plaintiff was in "fair control" of his diabetes at that time. Deposition of Alan Genser ("Genser Dep." at 44). Furthermore, Dr. Genser did not find any prob-

lems with Plaintiff's vision. *Id.* at 45. Nevertheless, Dr. Genser still recommended that Plaintiff's duties be restricted. *Id.* at 43.

The restrictions placed on Plaintiff included not being allowed to work in situations in which there were heights or hazardous conditions. (Alexander Dep. at 28). In addition, he could not "operate any [NYCTA] vehicle and off tracks and structures." *Id.* As a result of these restrictions, there were very few duties Plaintiff could perform. (Deposition of Marvin Lederman "Lederman Dep." at 26). Thus, according to Plaintiff, his duties and hours were greatly diminished. (Pl.'s Amended 3(g) Statement at ¶ 6). Defendant concedes that "Plaintiff lost a considerable amount of work time because his subdivision could not find assignments for him consistent with the medical restrictions noted by the NYCTA physicians." (Def.'s Mem. of Law at 4). Ultimately, Plaintiff was restored to full duty status in October of 1993.

Plaintiff contends that the NYCTA discriminated against him in violation of the ADA. (Pl.'s Verified Complaint and Jury Demand at ¶ 14). He maintains that since July 13, 1993, when the NYCTA learned of his diabetes and placed him on "no-work" status, the NYCTA has engaged in a course of conduct through which he was allegedly harassed and discriminated against because of his disability. *Id.* at ¶ 10. Plaintiff claims that he was denied promotions for which he met the requirements, was subjected to excessive and unreasonably frequent physical examinations, and he was deemed medically unqualified for a job which he was qualified to perform. *Id.* As a result, in addition to his ADA claim, Plaintiff brings a claim for intentional infliction of emotional distress under New York state law.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The

court need only determine if there is a genuine issue to be tried rather than resolve disputed issues of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment,

> [a] judge must ask himself ... whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].

*Wernick v. Federal Reserve Bank of NY,* 91 F.3d 379, 382 (2d Cir.1996) (quoting *Anderson,* 477 U.S. at 252).

The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995). Once the moving party has made a showing that there are no genuine issues of material fact to be tried, the burden shifts to the non-moving party to raise triable issues of fact. *Anderson,* 477 U.S. at 250. Mere conclusory allegations will not suffice. Instead, the non-moving party must present "significant probative supporting evidence" that there is a factual dispute. *Id.* at 249; Fed.R.Civ.P. 56(e).

Moreover, in considering a summary judgment motion, the court is required to view the evidence in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255. However, Fed.R.Civ.P. 56(c) "mandates the entry of summary judgment ... against a party who fails to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986). Further, summary judgment should be granted where the non-moving party's evidence is merely colorable, conclusory, speculative, or not significantly probative. *See Parker v. Chrysler Corp.,* 929 F.Supp. 162, 165 (S.D.N.Y.1996).

## II. Claims Under the ADA

The ADA prohibits employers from discriminating:

> against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). In order to prevail on a claim brought under the ADA, the plaintiff must first establish a prima facie case by producing evidence sufficient to support an inference of discrimination. *See Ryan v. Grae & Rybicki, P.C.,* 1996 WL 680256, *3 (E.D.N.Y. Nov.13, 1996), *aff'd,* 135 F.3d 867 (2d Cir.1998). Specifically, the plaintiff must show by a preponderance of the evidence that: (1) he is a disabled person under the ADA;[1] (2) he is otherwise qualified to perform his job; and (3) he suffered adverse employment action because of his disability. *Id. See also Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721–22 (2d Cir.1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995); *Christopher v. Laidlaw Transit Inc.,* 899 F.Supp. 1224, 1226–27 (S.D.N.Y.1995).

To demonstrate that he is disabled under the meaning of the ADA, the plaintiff must prove one of the following: (1) that he has a physical impairment[2] and that such impair-

---

1. "Disability" is defined as:
   (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
   (B) a record of such an impairment; or
   (C) being regarded as having such an impairment.
   42 U.S.C. § 12102(2).

2. A "physical impairment" under the ADA is defined by regulations promulgated by the Equal Employment Opportunity Commission as:

[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1).

ment substantially limits [3] one or more of his major life activities [4]; (2) that there is "a record of such an impairment"; or (3) that he is "being regarded as having such an impairment." *See* 42 U.S.C. § 12112(a); 42 U.S.C.A. § 12102(2).

■■■ The initial burden of production and persuasion in establishing a prima facie case of disability discrimination rests on the plaintiff. *See Wernick*, 91 F.3d at 383. If the plaintiff satisfies his burden of production and persuasion, in cases where the employer acknowledges consideration of the plaintiff's disability in its decision, then the burden shifts to the defendant "to rebut the inference that the handicap was improperly considered by demonstrating that it was relevant to the job qualifications." *Teahan v. Metro–North Commuter Railroad Co.*, 951 F.2d 511, 515 (2d Cir.1991), *cert. denied*, 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992) (evaluating claim under the Rehabilitation Act of 1973 (as amended in 29 U.S.C. § 794) (the "RHA")).[5] In other words, the defendant must prove that although it relied on the plaintiff's handicap in taking the adverse action, it was a permissible and appropriate factor to consider with respect to the employee's qualifications under the circumstances. *Id.* The plaintiff then "bears the ultimate burden of proving by a preponderance of the evidence that despite his handicap he is qualified." *Teahan*, 951 F.2d at 515.

### A. Prima Facie Case

### 1) Plaintiff's Disability

■■■ In order to establish a prima facie case of disability discrimination, Plaintiff must first demonstrate that he is disabled under the ADA. Plaintiff indeed suffers from a physical impairment, diabetes. However, the parties disagree as to whether the diabetic condition substantially limits one or more of the major life activities of Plaintiff. 42 U.S.C.A. § 12102.

Because Plaintiff makes no assertion that one or any of his major life activities has been substantially limited by his diabetic condition, Defendant disputes whether Plaintiff is in fact disabled under the ADA. Furthermore, Defendant contends that even if Plaintiff's diabetes, as diagnosed by the NYCTA's physicians, necessitated limiting Plaintiff's job duties, if the "impairment disqualifies a person from only a narrow range of jobs [it] is not considered a substantially limiting [condition]." *Heilweil*, 32 F.3d at 723.

Nevertheless, even though Plaintiff does not assert that his diabetes "substantially limits one or more of [his] major life activities," Plaintiff has still satisfied his burden of proving that he is disabled under the "regarded as" definition of disability. 42 U.S.C. § 12102(2)(C). Indeed, "an individual need not actually have a physical impairment to state a claim under the ADA or the RHA, as long as that individual is 'regarded as having such an impairment'." *Francis v. Meriden*, 129 F.3d 281, 284 (2d Cir.1997) (citing 42 U.S.C. § 12102(2)(C); 29 U.S.C. § 706(8)(ii)). "Regarded as having such an impairment" means that a person "has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation." 29 C.F.R. § 1630.2(*l*)(1). Thus, in deciding whether the ADA protects a plaintiff alleging discrimination on a "regarded as" theory, a court must determine if such plaintiff was perceived to have a physical

---

3. "Substantially limits" is defined in the ADA regulations in part as:

   (i) Unable to perform a major life activity that the average person in the general population can perform; or

   (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

   29 C.F.R. § 1630.2(j)(1).

4. "Major life activities" include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning; and working." 29 C.F.R. § 1630.2(i).

5. The ADA and the RHA are very similar. *See Francis v. Meriden*, 129 F.3d 281, 284 n. 4 (2d Cir.1997). Thus, courts look to case law interpreting one statute to assist them in interpreting the other. *Id. See also Myers v. Hose*, 50 F.3d 278, 281 (4th Cir.1995) (explaining that "the substantive standards for determining liability are the same" under both the RHA and the ADA).

impairment which substantially limits one or more of his major life activities. *See Ryan,* 1996 WL 680256 at * 5. In this case, the major life activity at issue is Plaintiff's ability to work.

With respect to the major life activity of working, the term "substantially limits" is defined as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs...." 29 C.F.R. § 1630(j)(3)(i). The Second Circuit has interpreted the term to mean "foreclosed a wide range of employment options within [the employee's] field" and "[foreclosure of] generally the type of employment involved." *Heilweil,* 32 F.3d at 724. (citations omitted). Therefore, an individual's inability to perform a single, particular job does not constitute a substantial limitation. *See* 29 C.F.R. § 1630(j)(3)(i).

Here, the NYCTA regarded Plaintiff as having a disability which substantially limits his major life activity of working. This is evidenced by the fact that Defendant immediately placed him on a no-work status and subsequently on restricted duty after learning of his diabetic condition. Dr. Alexander determined that the state of Plaintiff's diabetes could possibly "lead to major problems such as loss of consciousness, seizure, coma, [or] death." (Alexander Dep. at 45). As a result, she concluded that his duties needed to be greatly restricted. *Id.* at 28.

Importantly, Plaintiff was initially placed on a no-work status which demonstrates that Defendant believed he should not be working at all as a result of his condition. Additionally, the restrictions which were placed on Plaintiff further evidence the fact that the NYCTA regarded his impairment as a substantial limitation on his ability to perform a broad range of jobs.

The NYCTA physicians imposed restrictions which in effect forced Plaintiff out of the position he held at the time. *Id.* at 50. Under the medical restrictions, Plaintiff was only allowed to work in situations in which there were no heights and no hazardous conditions. *Id.* at 28. In addition, he could not "operate any [NYCTA] vehicle and off tracks and structures." *Id.* Furthermore, when asked to describe the less hazardous duties that Plaintiff could possibly perform under these restrictions, a NYCTA supervisor stated that "they are all hazardous." (Lederman Dep. at 26). "He went on to say that the NYCTA does not have ... restricted-type jobs. It's not in the field." *Id.*

According to Plaintiff, his duties and hours were greatly diminished after the July 13, 1993 physical examination. In fact, Defendant concedes that "Plaintiff lost a considerable amount of work time because his subdivision could not find assignments for him consistent with the medical restrictions noted by the NYCTA physicians." (Def.Mem. of Law at 4). Such restrictions effectively precluded Plaintiff from not only his particular job, but also a wide range of other jobs within the NYCTA. (Lederman Dep. at 25–29).

This Court finds that the NYCTA regarded Plaintiff as having a physical impairment which foreclosed employment opportunities in Plaintiff's field. In effect, the NYCTA believed that Plaintiff was significantly restricted in his ability to perform a broad range of jobs. *See Equal Employment Opportunity Comm'n v. Chrysler Corp.,* 917 F.Supp. 1164, 1168–69 (E.D.Mich.1996).[6] Accordingly, Plaintiff has shown that he is a disabled person under the ADA.

### 2) *Plaintiff's Qualifications*

■ Plaintiff must also prove "that he is otherwise qualified to perform his job" at the NYCTA. 42 U.S.C.A. § 12111(8). Under 42 U.S.C. § 12111(8), a "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that

6. In *Chrysler Corp.,* a case very similar to this one, the court found that the employer regarded its diabetic employee as disabled where it perceived the employee's high blood sugar as an impairment that would affect the employee's ability to find work across a spectrum of similar jobs. 917 F.Supp. at 1168–69. In addition, the Court noted that the type of work restrictions put on the employee demonstrated the employer's perception that the employee was incapable of working in a broad range of jobs. *Id.*

such individual holds or desires." 42 U.S.C. § 12111(8). *See also Gilbert v. Frank*, 949 F.2d 637, 641–642 (1991).

The "essential functions" of Plaintiff's positions as Power Distribution Maintainer and/or Power Distribution Maintainer's Helper for the NYCTA include, *inter alia*, working with live (circuit) equipment, doing regular maintenance, performing in an office, writing reports, driving and responding to emergencies involving the repair and replacement of third rails. (Lederman Dep. at 25–29). Such duties take place in subway tunnels, elevated structures and repair shop environments.

Plaintiff contends that despite his diabetic condition he has always been and continues to be qualified to handle all the responsibilities of a Power Distributor Maintainer. One of Plaintiff's supervisors, Frank Asnes, supports Plaintiff's contention that he has always performed his job in a satisfactory manner. (Asnes Dep. at 8). Mr. Asnes also felt that Plaintiff did not create or pose a threat to co-workers while on full duty status. *Id.* at 9.

However, Defendant disputes whether Plaintiff was qualified. First, Defendant points to the fact that Plaintiff's diabetic condition presented a safety concern possibly disqualifying Plaintiff from full duty. Defendant contends that it was not certain if Plaintiff's diabetes was under control in July of 1993. Accordingly, Defendant took precautionary measures in light of the potential risks involved with Plaintiff's performance of the essential functions of his job. Furthermore, Defendant states that Plaintiff may have posed a direct threat to himself, his co-workers and others if he continued on full duty status at that time.

Despite Defendant's assertions, it has not shown that Plaintiff was not qualified for his job in light of his diabetes. The Court finds it significant that Plaintiff has been a diabetic for forty years and has been in control of his condition. Moreover, Plaintiff has never experienced any problems on the job related to his diabetes. Although Defendant speculates as to possible safety concerns posed by Plaintiff's condition, no evidence has been produced demonstrating that Plaintiff's diabetes

rendered him incapable of performing his job responsibilities. Furthermore, the NYCTA physicians never inquired of Plaintiff's supervisors as to whether Plaintiff displayed any symptoms in his job performance demonstrating that he was not qualified. (Alexander Dep. at 30; Genser Dep. at 46). As a result, the Court concludes that Plaintiff has shown that he was qualified for his position.

█ Plaintiff has proven that he is disabled under the meaning of the ADA. Additionally, he has demonstrated that he was qualified for his job. Finally, it is clear that adverse action was taken against Plaintiff— as he was placed on no-work status for a period and subsequently placed on restricted duty. Thus, Plaintiff has established a prima facie case of disability discrimination.

## B. *Defendant's Consideration of Plaintiff's Condition*

█ As set forth above, if a plaintiff establishes a prima facie case, the defendant then has the burden of rebutting the inference that it improperly considered the plaintiff's disability. *See Teahan*, 951 F.2d at 515. It is not disputed that the action taken by Defendant was in response to discovering that Plaintiff has diabetes. However, Defendant claims that Plaintiff's condition was in fact relevant to Plaintiff's job qualifications. In particular, Defendant claims that Plaintiff may have posed a safety risk and possibly a direct threat to others, thereby necessitating its precautionary measures of restricting Plaintiff's work duties. Additionally, Defendant asserts that its placement of Plaintiff on restricted duty was an attempt on its part to make reasonable accommodations for Plaintiff, although unsolicited, in light of his condition.

Under 42 U.S.C. § 12113(a),

It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, ... that ... otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reason-

able accommodation, as required under this subchapter.

"Qualification standards" may include "a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12111(b).

The term "direct threat" is defined as a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). A slightly increased risk is not enough to constitute a direct threat; there must be a high probability of substantial harm. *See Chrysler Corp.*, 917 F.Supp. at 1170 (citing 29 C.F.R. § 1630.2(r)). Moreover, a mere speculative or remote risk is not sufficient. *Id.*

Indeed, the determination of whether an individual poses a "direct threat" must be based on an "individualized assessment of the individual's ability to perform safely the essential functions of the job." *Id.* The factors to be considered in deciding whether a person is a "direct threat" are: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm. 29 C.F.R. § 1630.2(r). However, it is Defendant's burden to prove that Plaintiff was a direct threat. *Chrysler Corp.*, 917 F.Supp. at 1171.

Despite Defendant's predictions, it has not produced evidence supporting its contention that Plaintiff posed a direct threat to himself or his co-workers. In essence, the only information on which Defendant based its action is the speculative conclusions of Dr. Alexander and Dr. Genser and the possibility that there may be future manifestations of symptoms of diabetes and complications related thereto. Dr. Alexander acknowledged that it is important to get a patient's complete history when analyzing him and that part of that complete history would be the patient's performance on the job. (Alexander Dep. at 30). Yet, neither Dr. Alexander nor Dr. Genser ever contacted Plaintiff's supervisors to learn whether Plaintiff ever had any diabetes-related problems on the job in the past. *Id.;* (Genser Dep. at 46, 48). Specifically, when Dr. Alexander was asked if Plaintiff displayed any symptoms in his job performance that led her to believe he had to be put on restriction she stated, "I didn't

know if he had any. I didn't pursue that, no." (Alexander Dep. at 30). Indeed, Dr. Alexander admits that she lacked important information at the time Plaintiff was placed on restricted duty. (*Id.* at 77).

Additionally, Defendant has not performed an individualized assessment of Plaintiff's condition to determine whether it posed a direct threat. Indeed, Dr. Genser stated that his individual assessment was not based at all upon actual job performance. (Genser Dep. at 48). The administration of the physicals and the tests conducted during Plaintiff's examinations do not constitute an individualized assessment as contemplated by 29 C.F.R. § 1630.2(r). *See Chrysler Corp.*, 917 F.Supp. at 1171. Thus, it was inappropriate for Defendant to take action without performing such assessment.

This Court finds that Defendant fails to provide any evidence that Plaintiff posed a direct threat to himself and/or others. In contrast, the evidence shows that Plaintiff did not pose such a threat. As stated above, Plaintiff has not experienced any diabetes related problems on the job thereby requiring the imposed work restrictions. Plaintiff informed the NYCTA physicians of this fact. (Alexander Dep. at 31). Indeed, Plaintiff was subsequently found to be in "fair control" of his diabetes by Dr. Genser. (Genser Dep. at 44). Moreover, Plaintiff always performed his job in a satisfactory manner on a full-duty status. Further, the Court has the benefit of hindsight in this instance and notes that Plaintiff was restored to full duty status and promoted. Certainly, a speculative or remote risk is insufficient to establish a "direct threat" defense. *See* 29 C.F.R. § 1630.2(r). Therefore, Defendant has not met its burden.

■ Furthermore, Defendant claims that it was attempting to make reasonable accommodations for Plaintiff in light of his condition. Plaintiff did not want the accommodations and they later proved to be unnecessary. Nevertheless, *assuming arguendo* that Defendant's actions were proper, this Court finds that the alleged accommodations were not reasonable. Importantly, the Court notes that at the time Defendant placed Plaintiff on no-work status and restricted duty, it lack sufficient information upon which to craft reasonable accommoda-

tions. Mere speculation is insufficient to allow Defendant to take the adverse action it took in this case. Further, Plaintiff was severely restricted in his duties which was not warranted in light of his condition and satisfactory performance.

## CONCLUSION

For the reasons stated above, this Court finds that Plaintiff has proven disability discrimination. Since there are no triable issues of fact, Plaintiff is entitled to a judgment as a matter of law. Accordingly, Plaintiff's motion for partial summary judgment is granted. The only issue remaining with regard to Plaintiff's ADA claim is damages. The parties are hereby directed to schedule a conference with United States Magistrate Judge Go in order to determine whether there are motions to be made with regard to Plaintiff's intentional infliction of emotional distress claim.

SO ORDERED.