Adam SIMMS, Plaintiff,

v.

THE CITY OF NEW YORK, the Fire Department of the City of New York, and Thomas Von Essen, as Commissioner of the Fire Department of the City of New York, Defendants.

No. 98 CV 7988(SJ).

United States District Court,
E.D. New York.

Feb. 26, 2001.

Pyle, Rome & Litchen, P.C., Boston, Massachusetts, By: Harold L. Litchen, Shannon Liss–Riordan, for Plaintiff.

Levy, Ratner & Behroozi, P.C., New York City, By: Daniel Engelstein, Veronica Villanueva, for Plaintiff.

Michael D. Hess, Corporation Counsel of the City of New York, New York City, By: Kevin J. Smith, for Defendants.

## *MEMORANDUM & ORDER*

JOHNSON, District Judge.

Adam Simms ("Plaintiff") filed the above-captioned action under the "Americans with Disabilities Act" (the "ADA"), 42 U.S.C. §§ 12111 ("Title I" of the ADA) and 12131 ("Title II" of the ADA), *et seq.*,[1] the Federal Rehabilitation Act, 29 U.S.C. § 794 ("RHA") and New York Human Rights Law, N.Y. Exec. Law § 292, *et seq.* ("NYHRL"), against the City of New York, the Fire Department of the City of New York, and Thomas Von Essen, Commissioner of the New York City Fire Department (collectively, "Defendants"). Before this Court are Plaintiff's motion for partial summary judgment and Defendants' cross-motion for partial summary judgment, both brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below. Plaintiff's motion is granted in part and denied in part, and Defendants' motion is denied in its entirety.

## BACKGROUND

Plaintiff began working as a firefighter with the New York City Fire Department

---

1. Defendants contend that Title II does not apply to employment discrimination claims such as those brought by Plaintiff. The Court of Appeals for the Second Circuit has not addressed this issue, however, several district courts in this circuit have reached conclusions contrary to Defendants' assertions. *See Magee v. Nassau County Medical Center,* 27 F.Supp.2d 154, 159 (E.D.N.Y.1998) (finding that an employee of a public entity may bring an employment discrimination claim under Title I or Title II of the ADA); *Rome v. MTA/ New York City Transit,* 1997 WL 1048908, *5 (E.D.N.Y. Nov. 17, 1997) (finding that Title II prohibits employment discrimination by public entities on the basis of disability); *Graboski v. Giuliani,* 937 F.Supp. 258, 269 (S.D.N.Y.1996) ("Title I and Title II analysis coalesce in employment discrimination matters.") This Court concurs and finds that Title II is indeed applicable to Plaintiff's employment discrimination claims.

(the "Department") in 1989 and was promoted to Lieutenant in 1996. From Plaintiff's date of hire until April 1998, Plaintiff served as a full duty firefighter in a variety of ladder and engine companies within the Department. In 1991, Plaintiff was diagnosed with diabetes mellitus. Plaintiff asserts that since his diagnosis, he has been in full control of his diabetes through a careful regimen of diet and medication, prescribed by Dr. Andrew Drexler. (Pl. Mem. at 2.) This regimen consists of measuring his blood sugar, modifying his diet and medication schedule, and injecting himself with the proper dosage of insulin. Plaintiff must engage in this regimen four times each day, with each session lasting approximately 15 minutes. Plaintiff did not disclose his medical condition to the Department upon being diagnosed, rather, the Department learned of Plaintiff's diabetes after receiving an anonymous letter. (Defs. Opp'n at 3.) The letter stated that Plaintiff had been observed "shooting up" while on the job. *Id.* Shortly thereafter, on or about April 1, 1998, Plaintiff was interviewed by Dr. Kerry J. Kelly, the Chief Medical Officer at the Department's Bureau of Health Services ("BHS"), and was given a blood test. The Department placed Plaintiff on light desk duty, until he was able to provide more information regarding his medical condition and/or alleged drug use.[2] The Department eventually learned that Plaintiff was diabetic and Plaintiff attended several subsequent appointments with BHS staff, including reviews conducted by both a three physician review board and a seventeen physician review board. Although there is significant disagreement between the parties as to how thoroughly the Department assessed Plaintiff's condition and its effect on his ability to engage in full duty firefighting, Plaintiff was eventually placed on permanent light duty status. Plaintiff claims that since his transfer to light duty, he has made twelve requests to return to full duty assignments. According to Plaintiff, each of these requests, including a request to transfer to a firefighter instructor position in the Department's training unit, was denied because of Plaintiff's diabetes. (Pl. Mem. at 3.)

Plaintiff contends that the New York City Fire Department discriminated against him in violation of the ADA, the RHA, and NYHRL, by precluding him from engaging in active firefighting duties because of his diabetes, although Plaintiff claims he was and remains fully qualified and capable of performing the essential functions of the active duty fire lieutenant position. Plaintiff also disagrees with Defendants' assertion that he has not been harmed because he has retained his title of Lieutenant along with its base salary and other attendant benefits. Specifically, Plaintiff argues not only that he has lost many of the benefits afforded full duty firefighters, including substantial overtime pay and career advancement, but also that he suffers from severe emotional distress and loss of self-worth as a result of the Department's actions. (Pl. Mem. at 6.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

---

2. The Department's diabetes mellitus policy provides that diabetic firefighters "must remain on light duty while requiring oral medication or insulin." *See* New York City Fire Department Mellitus Policy, Para. 3. The distinction between light duty and active duty deserves some explanation. Defendants state that active or full duty firefighters engage in fire suppression and control, as well as rescue operations, while light duty firefighters serve the management needs of the Department. (Defs. Opp'n at 20).

gether with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court need only determine if there is a genuine issue to be tried rather than resolve disputed issues of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995). Once the moving party has made a showing that there are no genuine issues of material fact to be tried, the burden shifts to the non-moving party to raise triable issues of fact. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. Mere conclusory allegations will not suffice. Instead, the non-moving party must present "significant probative supporting evidence" that there is a factual dispute. *Id.* at 249, 106 S.Ct. 2505; Fed.R.Civ.P. 56(e). Moreover, in considering a summary judgment motion, the court is required to view the evidence in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Therefore, summary judgment will be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. Claims Under the ADA and RHA

■ The ADA prohibits employers, covered by the Act, from discriminating:

against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). A plaintiff alleging employment discrimination under the ADA or RHA bears the initial burden of establishing a prima facie case.[3] *See Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998). Specifically, the plaintiff must show by a preponderance of the evidence that: (1) he is a disabled person under the ADA; (2) he is otherwise qualified to perform his job; and (3) he suffered adverse employment action because of his disability. *Id.* at 869–870.

■ If the plaintiff satisfies this burden and the defendant acknowledges that plaintiff's disability was a basis for its decision, the burden shifts to the defendant "to rebut the inference that the handicap was improperly considered by demonstrating that it was relevant to the job qualifications." *Teahan v. Metro–North Commuter Railroad Co.,* 951 F.2d 511, 515 (2d Cir.1991), *cert. denied,* 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992). The plaintiff, however, "bears the ultimate burden of proving by a preponderance of the evidence that despite his handicap, he is qualified." *Teahan,* 951 F.2d at 515.

### A. Plaintiff's Prima Facie Case

#### 1) Disability

■ In order to establish disability under the ADA, Plaintiff must prove one of

**3.** The ADA and the RHA prohibit the same type of discrimination, therefore, courts look to case law interpreting one statute to assist in interpreting the other. *See Francis v. City of Meriden,* 129 F.3d 281, 284 n. 4 (2d Cir. 1997). The analysis and definition of disability under the two statutes is essentially the same. *See Reeves v. Johnson Controls World Services, Inc., et al.,* 140 F.3d 144 (2d Cir. 1998).

the following: (A) that he has a physical impairment[4] and that such impairment substantially limits[5] one or more of his major life activities; (B) that there is a record of such an impairment; **or** (C) that he is being regarded as having such an impairment. *See* 42 U.S.C.A. § 12102(2) (emphasis added). Furthermore, the Supreme Court held in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), that the determination of whether an individual is disabled under prong (A) of the ADA disability standard requires consideration of the individual's impairment in its mitigated, or medicated state. After noting that severely myopic plaintiffs were able to attain 20/20 eyesight using corrective lenses, the Supreme Court held that an impairment which has been corrected or mitigated by medication or other measures is not an impairment that would "substantially limit" a major life activity, and therefore such plaintiffs were precluded from reaping the benefits of the protections of the ADA. *Id.*

Plaintiff asserts that he is disabled under all three prongs of § 12102(2). Specifically, Plaintiff argues that he is disabled under section (A) because he is substantially limited in the manner in which he performs the major life activity of maintaining stable blood sugar levels, he is disabled under section (B) because he has a record of such an impairment, and finally, he is disabled under section (C) because the Department regards him as being substantially limited in the major life activities of working and maintaining stable blood sugar levels. (Pl. Mem. at 9–12.)

Defendants contend that Plaintiff has failed to establish even a threshold showing of disability under the ADA. They argue that Plaintiff's blood sugar is so well regulated by insulin treatments, that he is not substantially limited in any major life activity. Defendant further challenges that maintaining stable blood sugar levels is not a major life activity as defined by the ADA, and as such, cannot serve as the basis for finding Plaintiff disabled as a matter of law.

The initial inquiry in assessing Plaintiff's claims is whether maintaining one's blood sugar levels is a major life activity as defined by the ADA. A non-exclusive list of major life activities has been provided by the EEOC. These include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *See* 29 C.F.R. § 1630.2(i). The Second Circuit has provided additional guidance for analyzing whether an unlisted activity fits within the statutory paradigm. In *Reeves,*

---

**4.** The Equal Employment Opportunity Commission ("EEOC") is the agency with principal responsibility for the enforcement of the ADA and to whose interpretation of the statute courts are required to accord great deference. *See Muller v. Costello*, 187 F.3d 298, 312 (2d Cir.1999). The EEOC has defined a "physical impairment" under the ADA as:

[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1).

**5.** The EEOC has defined "substantially limits" to mean:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

the Second Circuit, finding that "everyday mobility" was too narrowly defined to constitute a major life activity, held that the touchstone test is the significance of the activity as it relates to other life activities. *Reeves*, 140 F.3d at 151. Additionally, the *Reeves* court found that the activity in question must be of general importance to all people, rather than so narrowly tailored as to be important to only an individual plaintiff. *Id.*

Here, Plaintiff challenges Defendants' assertions that maintaining stable blood sugar levels is not a major life activity by analogizing it to breathing. Plaintiff states that breathing and maintaining blood sugar levels are both activities that unimpaired people perform continuously and automatically and if ceased, will lead to death. While this Court recognizes the connection that Plaintiff attempts to make, the Court disagrees with Plaintiff's ultimate conclusion. Were this Court to find that maintaining blood sugar was a major life activity, it would essentially relieve all diabetic plaintiffs from making an individualized showing of substantial limitation. This result is clearly prohibited by *Reeves*. *Id.* at 152. The Court is also persuaded by the reasoning set forth in *Weber v. Strippit, Inc.*, 186 F.3d 907, 913 (8th Cir.1999), *cert. denied* 528 U.S. 1078, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000). The *Weber* court found that a plaintiff suffering from heart disease was misguided in his attempts to characterize "having a fully functioning cardiovascular system" as a major life activity under the ADA. *Id.* The court found that the plaintiff was confusing the terms impairment, major life activity, and disability. This Court similarly finds that maintaining stable blood sugar is an element of Plaintiff's impairment, rather than a major life activity. Accordingly, in the instant case, working is the only major life activity for which any substantial limitation, real or perceived, must be assessed.

■ Plaintiff does not argue that he is substantially limited in the major life activity of working or that he has a record of such impairment. Plaintiff argues only that Defendants regard him as being substantially limited in his ability to work. In analyzing the major life activity of working, substantial limitation is defined as a significant restriction "in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Therefore, a plaintiff must be regarded as precluded from more than one particular job to be deemed disabled under this section. *See Sutton*, 527 U.S. at 490, 119 S.Ct. 2139; *Murphy v. United Parcel Service*, 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999).

Defendants argue that firefighter is not a "class of jobs" as defined under the ADA and the EEOC regulations. Defendants cite a number of cases to support this argument, including, *Colwell v. Suffolk County Police Dep't* and *Heilweil v. Mount Sinai Hospital. See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 647 (2d Cir.1998), *cert. denied* 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999) (rejecting police officers' argument that their assignment to light duty positions, which relieved them from any physical "confrontations", permitted the inference that the officers were substantially limited in their ability to work); *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 724 (2d Cir.1994) (finding that plaintiff was only precluded from working in one place in hospital—the blood bank—and was therefore, not substantially limited in her ability to work). Plaintiff relies nearly exclusively on *Dipol v. New York City Transit Authority*, 999 F.Supp. 309

(E.D.N.Y.1998). In *Dipol*, this Court concluded that a diabetic plaintiff was disabled because his employer restricted his work such that the type and amount of work he could perform were severely limited. *Id.* at 313.

Here, Plaintiff has not only alleged that he was precluded from full duty service, but also claims he was denied a position as a First Line Supervisor in the Training Division of the Department because such positions are only open to full duty firefighters. Defendants' October 7, 1999 letter to Plaintiff's counsel confirms this assertion. (Pl. Mem. at Ex. H). As Plaintiff is precluded from more than one type of job within the Department, the Court finds that Defendants regard Plaintiff as being substantially limited in his ability to work. Accordingly, this Court finds, as matter of law, that Plaintiff is disabled under 42 U.S.C. § 12102(2)(c).

### 2) Qualified Individual

As the Court has deemed Plaintiff disabled under the ADA and RHA. Plaintiff must next prove that he is otherwise qualified to perform his job at the Department. *See Ryan,* 135 F.3d at 869. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *See Gilbert v. Frank,* 949 F.2d 637, 641–642 (1991). The Second Circuit has determined that the inquiry can be distilled as the need to examine "what conduct is symptomatic of the handicap, what conduct the job in question requires,

and how these two interact." *D'Amico v. City of New York, et al.,* 132 F.3d 145, 151 (2d Cir.1998).

The "essential functions" of Plaintiff's position as a Department firefighter include fire suppression and responding to emergency calls. (Def. Opp'n at 5.) Plaintiff contends that despite his diabetes, he has always been and continues to be qualified to handle all of the responsibilities required of full duty firefighters. Plaintiff's treating physician and expert doctor have opined to the same. (Smith Declaration ("Smith Decl."), Exs. D at 12 and E at 35–36.) In fact, Plaintiff asserts that in the seven years after he was diagnosed, but prior to the Department learning of his condition, he never experienced any problems on the job related to his diabetes. (Pl. Mem. at 14.)

Defendants vehemently dispute Plaintiff's qualifications. Defendants' primary argument is that Plaintiff's diabetic condition presents a direct threat to others in the workplace and therefore, he is legitimately disqualified from full duty status. Defendants dispute Plaintiff's assertions that he has never had any difficulties performing active duty job responsibilities, but do not present sufficient evidence to the contrary.[6] Defendants encourage this Court to not only consider the likelihood that Plaintiff might suffer a hypoglycemic episode while engaging in active firefighting activities, but also to explore the magnitude of the resulting consequences.

As the Court stated in *Dipol*, for Defendants to show that Plaintiff was not qualified for his job in light of his diabetes, Defendants must present more than speculation as to possible safety concerns posed

---

6. Defendants claim that such evidence is contained in Smith Decl. Ex. B at 9 and Ex. H. (Def. Resp. to Pl. Rule 56.1 Statement.) Neither of these documents show that Plaintiff had difficulty performing his job responsibilities, only that Plaintiff has on occasion, suffered from hypoglycemia. Such evidence is not conclusive enough to sustain a grant of summary judgment in Defendants' favor.

by Plaintiff's condition. *Dipol,* 999 F.Supp. at 315. Defendant must produce evidence demonstrating that Plaintiff's diabetes rendered him incapable of performing his job responsibilities. Accordingly, the Court finds that there is a material dispute as to whether Plaintiff is qualified to act as a full duty firefighter and that such a dispute is properly resolved by a jury at trial.

### 3) Adverse Employment Action

 The final element of Plaintiff's prima facie case is a showing that "he suffered adverse employment action because of his disability". *See Ryan.* 135 F.3d at 867. An "adverse employment action" must constitute "a materially adverse change in the terms and conditions of employment." *See Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997). Plaintiff cites his transfer to light duty as the adverse employment action. He argues that in addition to the change in the substance of his work, this transfer caused him to suffer a significant reduction in his responsibilities and promotion opportunities, as well as a loss of overtime compensation.

Defendants argue that Plaintiff has not suffered an adverse employment action since Plaintiff retains his rank and base pay rate. Defendant also contends that Plaintiff has failed to prove, through evidence in the record, that he has suffered a pecuniary loss from the lack of overtime. (Def. Rep. Mem. at 12.)

 Despite Defendants' assertions, Plaintiff has sufficiently proven that his transfer from full duty to light duty was an adverse employment action based on his disability. A materially adverse change in the terms and conditions of employment is not limited solely to pay, but may encompass other less tangible changes such as a less distinguished title, a material loss of benefits, or significantly diminished mate-

rial responsibilities. *See Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000). Plaintiff's case fits squarely within this analysis. Plaintiff was removed from a position where he suppressed fires and conducted emergency rescue missions to a job that is essentially clerical. Even more meaningful, is Plaintiff's inability to serve as a training instructor while he is on light duty status. Finally, as courts have consistently held that adverse employment actions are not limited to "instances of discrimination in pecuniary emoluments," plaintiff is under no obligation to prove the exact financial loss resulting from such a transfer. *See Rodriguez v. Board of Educ.,* 620 F.2d 362, 366 (2d Cir.1980).

This Court finds that Plaintiff has satisfied two of the three prongs of his prima facie case and grants Plaintiff summary judgment on those two issues. Plaintiff has made a showing that 1) he is disabled under the ADA and RHA; and 2) he has suffered an adverse employment action. Plaintiff must therefore prove at trial that he is qualified to engage in active duty firefighting in order to establish a prima facie case of discrimination.

### B. Defendant's Consideration of Plaintiff's Condition

 As set forth above, if Plaintiff is able to establish a prima facie case at trial, Defendants will then have the burden of rebutting the inference that it improperly considered Plaintiff's disability as a basis for the employment action. *See Teahan,* 951 F.2d at 515. It is not disputed that the action taken by Defendants was in response to discovering that Plaintiff has diabetes, however. Defendants contend that Plaintiff's condition was relevant to Plaintiff's job qualifications. Specifically, Defendants claim that Plaintiff poses a threat to the health and safety of victims

of a fire, other firefighters, and himself. (Def. Opp'n Mem. at 16).

■ The ADA states:

It may be a defense to a charge of discrimination ... that an alleged application of qualification standards, ... that ... otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

42 U.S.C. § 12113(a). "Qualification standards" may include "a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). Furthermore, the term "direct threat" is defined as a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). A slightly increased risk is not enough to constitute a direct threat, there must be a high probability of substantial harm. *Dipol,* 999 F.Supp. at 316.

The determination of whether an individual poses a direct threat must be based on an "individualized assessment of the individual's ability to perform safely the essential functions of the job." *Id.* The factors to be considered in deciding whether a person is a "direct threat" are: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm. 29 C.F.R. § 1630.2(r). The burden of proof in this respect remains with Defendant. *Id.* As there is significant disagreement between the parties as to both the adequacy and result of Defendants' assessment of Plaintiff's qualifications, summary judgment cannot be granted to either Plaintiff or Defendants on this issue.

### III. Claims under the NYHRL

■ Plaintiffs assertion that NYHRL articulates a more relaxed standard for determining disability is correct. *See Reeves,* 140 F.3d at 155; *Weissman v. Dawn Joy Fashions,* 214 F.3d 224, 233 (2d Cir.2000). NYHRL defines disability as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21). While Plaintiff is clearly disabled under this standard, Plaintiff must also establish that he could perform the essential functions of the job with or without reasonable accommodation. *See State Division of Human Rights v. Xerox Corp.,* 65 N.Y.2d 213, 218, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985). Accordingly, the same questions of fact which preclude a grant of summary judgment to either party on Plaintiff's ADA claims also preclude such a ruling on Plaintiff's state claim.

■ Finally, Defendants incorrectly argue that Plaintiff's claim under NYHRL must fail because Plaintiff did not timely file a Notice of Claim. As Plaintiff correctly contends, the Notice of Claim requirement does not apply to claims brought under the NYHRL. *See Dortz v. City of New York,* 904 F.Supp. 127, 141 (S.D.N.Y.1995).

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is granted in part and denied in part. Defendants' motion for partial summary judgment is denied in its entirety.

SO ORDERED.