John A. FRANCIS, Plaintiff–Appellant,

v.

CITY OF MERIDEN, Defendant–Appellee.

No. 1663, Docket 96–9610.

United States Court of Appeals,
Second Circuit.

Argued June 11, 1997.

Decided Nov. 17, 1997.

Gary Phelan, New Haven, CT (Garrison, Phelan, Levin–Epstein & Penzel, P.C., of counsel), for Plaintiff–Appellant.

Megan J. Green, City of Meriden Department of Law, Meriden, CT, for Defendant–Appellee.

Before: OAKES, ALTIMARI and PARKER, Circuit Judges.

PARKER, Circuit Judge:

John Francis appeals from a judgment entered in the United States District Court for the District of Connecticut (Gerard L. Goettel, *J.*) dismissing his claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, and the Federal Rehabilitation Act of 1973 ("RHA"), as amended, 29 U.S.C. §§ 701–797b. Francis, a firefighter, alleges that he was discriminated against in violation of these statutes because his employer, the City of Meriden ("Meriden"), disciplined him for exceeding fire department weight guidelines. Based solely on the fact that Meriden applied its weight guidelines to him, Francis claims that Meriden mistakenly perceived that he had a dis-ability and discriminated against him on that basis, thereby violating the statutes, which make it unlawful to discriminate against an individual based on the perception that the individual is disabled. The district court adopted the Report and Recommendation of a magistrate judge recommending that the case be dismissed, in part because Francis did not allege that he suffered from a disability. We agree with Francis that the district court misconstrued the nature of his claim by requiring that he allege that he suffers from a disability. However, because Francis only claims that Meriden disciplined him for failing to meet a generally applicable weight standard, and does not claim that Meriden regarded him as suffering from a physiological disorder within the meaning of the statutes, we affirm.

## I. BACKGROUND

Francis alleges that, in 1990, Meriden entered into a collective bargaining agreement ("CBA") with its firefighters union. The CBA included a weight/fitness requirement as well as a height/weight chart establishing acceptable maximum weights for all firefighters. A firefighter whose weight exceeded the limits had to demonstrate his fitness by passing either a body fat test or a physical fitness test. If the firefighter exceeded the maximum weight and failed to pass the body fat test or alternative fitness test, the firefighter was subject to discipline, up to and including termination.

Based on his height, Francis's maximum acceptable weight under the CBA was 188 pounds. Between 1991 and 1996, however, his weight fluctuated at between 217 and 247 pounds. In 1993, Francis was reprimanded for being overweight. After repeatedly failing to meet the target weight and refusing to take the body fat or fitness test, he was suspended by the fire department in 1994 for one day without pay. That same year, the fire department also suspended a captain, a fire inspector and two lieutenants for failing to meet the weight requirements.

Francis now alleges that because Meriden disciplined him for failing to meet the weight standard, Meriden "intended to discriminate

against Francis because of [Meriden's] perception that he had a disability." Specifically, he claims that

> by suspending plaintiff for exceeding [Meriden's] weight restrictions, by requiring him to meet a body fat measurement requirement or an alternative fitness test, but not imposing the same requirement on employees whose weight met [Meriden's] "acceptable" weight limits, and by subjecting him to disciplinary action because he refused to take either the body fat or alternative fitness test that employees' [sic] whose weight falls below [Meriden's] "acceptable" weight limits are not required to take, [Meriden] violated [the ADA and the RHA].

The district court, adopting the magistrate judge's Report and Recommendation, dismissed Francis's claims. The magistrate judge found that Francis failed to state a claim because his complaint did not allege that he suffered from a physical impairment. As we explain below, the reasoning of the district court was in error. We nonetheless affirm, albeit on different grounds.

## II. DISCUSSION

### A. *The Statutory Scheme*

The ADA and the RHA, upon which the ADA was modeled, are very similar. Each prohibits discrimination against the disabled and each, as Francis argues, extends its protection to discrimination against those whom an employer perceives, even mistakenly, to have a disability. The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). "Disability" includes:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) *being regarded as having such an impairment.*

*Id.* § 12102(2) (emphasis added).

The RHA prohibits the same type of discrimination but applies only to federally funded programs, providing:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794(a). An "individual with a disability" is

> any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) *is regarded as having such an impairment.*

*Id.* § 706(8)(B) (emphasis added).

■ A "physical impairment" under the ADA is defined by regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory ..., cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).[1] This definition of "physical impairment" is identical to that contained in Department of Health and Human Services ("DHHS") regulations promulgated under the RHA. *See* 45 C.F.R. § 84.3(j)(2)(i).[2] In

---

1. We accord "great deference" to the EEOC's interpretation of the ADA, since it is charged with administering the statute. *See Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 309 (2d Cir.1996) (according "great deference" to the EEOC's interpretation of Title VII).

2. The DHHS regulations promulgated under the RHA were drafted with congressional oversight and approval; thus, the Supreme Court has indicated that they are "'an important source of guidance on the meaning of [the RHA].'" *See School Bd. v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1126, 94 L.Ed.2d 307 (1987) (quoting *Alex-*

addition, according to EEOC interpretive guidance to the ADA regulations,

> [i]t is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural and economic characteristics that are not impairments. The definition of the term "impairment" does not include physical characteristics such as eye color, hair color, or, left-handedness, or height, weight or muscle tone that are within "normal" range and are not the result of a physiological disorder.

29 C.F.R. § 1630.2(h).

"Physical impairments" under both the ADA and the RHA must "substantially limit[ ] one or more of" an individual's "major life activities." 42 U.S.C. § 12102(2)(ADA); 29 U.S.C. § 706(8)(B)(RHA). "Major life activities" are defined in the regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i)(ADA); 45 C.F.R. § 84.3(j)(2)(ii)(RHA). The term "substantially limits," in turn, is defined in the ADA regulations in part as:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).[3] We consider Francis's claim with this statutory framework in mind.

**B.** *The Applicability of the ADA and the RHA to Obesity*

**1.** *The "Regarded As" Prong and "Physical Impairment"*

█ Based on the statutory scheme, Francis is correct that the district court erroneously required that he allege that his weight is a disability. An individual need not actually have a physical impairment to state a claim under the ADA or the RHA, as long as that individual is "regarded as having such an impairment." 42 U.S.C. § 12102(2)(C)(ADA); 29 U.S.C. § 706(8)(B)(iii)(RHA). These subsections include within the protections of the ADA and the RHA

> those persons who do not in fact have the condition which they are perceived as having, as well as those persons whose mental or physical condition does not substantially limit their life activities.... Members of both of these groups may be subjected to discrimination on the basis of their being regarded as handicapped.

*School Bd. v. Arline*, 480 U.S. 273, 279 n. 4, 107 S.Ct. 1123, 1127 n. 4, 94 L.Ed.2d 307 (1987)(quoting S.Rep. No. 93–1297, at 39 (1974))(interpreting the RHA).[4] Rather, an individual is covered by the "regarded as" prong of the definition of disability in the ADA and the RHA if he "has none of the impairments defined in [the definition of the term 'impairment'] but is treated by a covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l)(ADA); *see also* 45 C.F.R. § 84.3(j)(iv)(RHA) (containing similar language). This turns on the employer's perception of the employee, a question of intent, not whether the employee has a disability. *See Holihan v. Lucky Stores, Inc.*, 87 F.3d 362, 366 (9th Cir.1996) (affirming dismissal of actual disability claim while reversing dismissal of "regarded as" claim, after determining that evidence would support conclusion that employer believed plaintiff to have a disabling mental impairment), *cert. denied,* —— U.S. ——, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997); *Katz v. City Metal Co.*, 87 F.3d 26, 33 (1st Cir.1996) ("Even if medical expert testimony were required here to permit the jury to find that [the plaintiff] was suffering from a continuing

---

*ander v. Choate*, 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 721, 83 L.Ed.2d 661 (1985)).

**3.** The RHA regulations do not provide a definition of "substantially limits."

**4.** Because the ADA and the RHA are very similar, we look to caselaw interpreting one statute to assist us in interpreting the other. *See Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir.1997) (citing *Wooten v. Farmland Foods*, 58 F.3d 382, 385 n. 2 (8th Cir.1995)).

serious heart condition, the jury certainly did not need medical testimony in making its own judgment as to what the employer may have perceived, rightly or wrongly, about [the plaintiff's] condition."); *Hamm v. Runyon*, 51 F.3d 721, 724 (7th Cir.1995) ("We must therefore determine whether [the employer] knew about [the plaintiff's] arthritis and, if so, whether he thought that it had substantially affected [the plaintiff's] ability to walk.").[5]

We nonetheless affirm, based on our agreement with the recent decision of the United States Court of Appeals for the Sixth Circuit in *Andrews v. State of Ohio*, 104 F.3d 803 (6th Cir.1997). In *Andrews*, the Sixth Circuit held that, to state a claim under the "regarded as" disabled prong of the ADA or the RHA, a plaintiff must allege that his employer regarded him as having an "impairment" within the meaning of the statutes. This Francis has not done. As in *Andrews*, Francis only alleges that his employer disciplined him for failing to meet a general weight standard. He does not claim that his employer regarded him as suffering from a physiological weight-related disorder.

■ A plaintiff cannot state a claim under the "regarded as" prong of the ADA or the RHA simply by alleging that the employer believes some physical condition, such as height, weight, or hair color, renders the plaintiff disabled. Rather, the plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an "impairment" that, if it truly existed, would be covered under the statutes and that the employer discriminated against the plaintiff on that basis. *See id.* at 810. As the Sixth Circuit reasoned in *Andrews*, considering allegations of discrimination asserted by police officers who exceeded a weight standard, "[b]ecause a mere physical characteristic [such as moderate obesity] does not, without more, equal a physiological disorder,

where an employee's failure to meet the employer's job criteria is based solely on the possession of such a physical characteristic, the employee does not sufficiently allege a cause of action under these statutes." *Id.* The Court noted that several complaining police officers had "not alleged anything more about a 'perceived impairment' than that they ... exceeded the [highway patrol] weight limit and that they ... failed to meet the [highway patrol] fitness criteria." *Id.* at 809–10. The Court noted the absence of any allegation that the state regarded the officers as having physiological weight disorders and discriminated against them based on that perception. *See id.; see also Tudyman v. United Airlines*, 608 F.Supp. 739, 746 (C.D.Cal.1984) ("Defendant merely regards plaintiff as not being under a certain weight. For the same reasons that the failure to qualify for a single job does not constitute a limitation on a major life activity, refusal to hire someone for a single job does not in and of itself constitute perceiving the plaintiff as a handicapped individual.... This Court refuses to make the term handicapped a meaningless phrase.") (interpreting the RHA).[6]

*Andrews* is in accord with our decision in *Daley v. Koch*, 892 F.2d 212 (2d Cir.1989), where we interpreted the "regarded as" prong of the RHA as requiring an allegation that the employer regarded the employee as disabled within the meaning of the RHA. In *Daley*, we rejected the plaintiff's contention that "poor judgment, irresponsible behavior and poor impulse control," the grounds stated by the defendant for not hiring the plaintiff, constituted a mental impairment within the meaning of the act. *Id.* at 215. Accordingly, we upheld summary judgment for the defendant, reasoning that

> [i]f appellant had been perceived by the Police Department to be suffering from an impairment which substantially limits a major life activity, whether or not in reali-

---

5. Francis is also correct that the district court erroneously read the ADA and the RHA to require that Meriden's discrimination "substantially limit[ ] one of his major life activities." As is clear from the language of the statutes, neither requires a plaintiff to prove that the employer's discrimination "substantially limits one of his major life activities"; rather, that is in part how

the statutes define disability. *See* 42 U.S.C. § 12102(2)(ADA); 29 U.S.C. § 706(8)(B)(RHA).

6. The definition of disability in the RHA was amended in 1992 to substitute the term "disability" for "handicaps." *See* Rehabilitation Act Amendments of 1992, Pub.L. No. 102–569, § 102(f)(1)(A), 106 Stat. 4344, 4348.

ty he had no impairment, then he might qualify for relief under the [RHA]. However, it is clear from the facts that the Police Department never considered appellant to be suffering from an impairment which substantially limits a major life activity and did not diagnose appellant as having any disorder.

*Id.* at 215–16. To be considered disabled under the "regarded as" prong of the statutes, therefore, a plaintiff must allege that the employer regarded the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled.

### 2. *The "Regarded As" Prong, "Physical Impairment" and Obesity*

■ Francis's claim fails because obesity, except in special cases where the obesity relates to a physiological disorder, is not a "physical impairment" within the meaning of the statutes. The statutes define disability as "A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such an impairment; or C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(ADA); *see also* 45 C.F.R. § 84.3(j)(1)(i)(RHA)(containing similar language). "[S]uch an impairment" within the meaning of subsection (C) plainly refers to a "physical or mental impairment" within the meaning of subsection (A). *See Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 172 (4th Cir.1997)("The 'such an impairment' language incorporates by reference subsection (A)'s description of the sort of impairment that qualifies as a disability."). Accordingly, we agree with the holding in *Andrews* that "physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or *perceived* disability." 104 F.3d at 808 (emphasis added)(quoting 29 C.F.R. § 1630.2(h)).

Generally, weight is not such an impairment. The EEOC, in its interpretive regulations to the ADA, explains that "the term 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, *weight* or muscle tone

that are within 'normal' range and are not the result of a physiological disorder." 29 C.F.R. § 1630.2(h)(emphasis added). Thus, while a cause of action may lie against an employer who discriminates against an employee on the basis of the perception that the employee is morbidly obese, *see Cook v. State of Rhode Island, Dep't of Mental Health, Retardation, and Hosps.,* 10 F.3d 17, 25 (1st Cir.1993), or suffers from a weight condition that is the symptom of a physiological disorder, *see* 29 C.F.R. § 1630.2(h), no cause of action lies against an employer who simply disciplines an employee for not meeting certain weight guidelines. To hold otherwise would open up the "regarded as" prongs of the ADA and the RHA to a range of physical conditions—height, strength, dexterity, and left-handedness, for example—not meant to be covered by the acts. *See Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1249 (6th Cir.1985)("Characteristics such as average height or strength that render an individual incapable of performing particular jobs are not covered by the [RHA] because they are not *impairments.*").

Our interpretation is compelled by the purposes of these statutes, which are, in significant part, "to empower individuals with disabilities ... through ... the guarantee of equal opportunity," 29 U.S.C. § 701(b)(1)(RHA), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities," 42. U.S.C. § 12101(b)(2)(ADA). The RHA, like the ADA,

> assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared.

*Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986). The acts reach discrimination where an individual does not have a physical impairment but is erroneously perceived as having one, to further the "high purpose" of

ending discrimination against those who have, or once had, the types of physiological disabilities covered by the statutes.

By subjecting to liability employers who discriminate on the mistaken belief that an individual has a disability—for example, an employer who fires an employee based on the erroneous belief that the employee has heart disease—the acts deter discrimination against those who actually have such disabilities. Also, by outlawing such discrimination, the acts address the problem of the employer who, based on nothing more than superstition or irrational fear, regards an individual as having a substantially limiting impairment when the individual is either capable of working or has no impairment at all. As the Supreme Court has explained,

> [t]o combat the effects of erroneous but nevertheless prevalent perceptions about the handicapped, Congress expanded the definition of "handicapped individual" [in the RHA] so as to preclude discrimination against "[a] person who has a record of, or is regarded as having, an impairment [but who] may at present have no actual incapacity at all."

*Arline,* 480 U.S. at 279, 107 S.Ct. at 1126 (quoting *Southeastern Community College v. Davis,* 442 U.S. 397, 405–06 n. 6, 99 S.Ct. 2361, 2366–67 n. 6, 60 L.Ed.2d 980 (1979)). This prong of the definition of disability aids those whose impairment, history of impairment, or physical appearance caused by an impairment, is stigmatizing. *See id.; see also* H. Rep. No. 101–485(II), at 53 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 335 ("This third prong is particularly important for individuals with stigmatic conditions that are viewed as physical impairments but do not in fact result in a substantial limitation of a major life activity. For example, severe burn victims often face discrimination.") (ADA). An employer may violate the acts by refusing to hire an individual because of the fear that others may react negatively to the fact that the individual has or once had a disease, even if the disease poses no danger to others. *See Arline,* 480 U.S. at 276, 107 S.Ct. at 1125 (involving teacher who was terminated after a recurrence of tuberculosis); H. Rep. No. 101–485, at 52–53(ADA). Thus, the acts reach perceived disability

claims to deter discrimination against those who actually suffer from the types of physiological disorders the statutes were intended to cover.

It would be inconsistent with these purposes to construe the acts to reach alleged discrimination by an employer on the basis of a simple physical characteristic, such as weight. *See Andrews,* 104 F.3d at 809–10. This would make the central purpose of the statutes, to protect the disabled, incidental to the operation of the "regarded as" prong, which would become a catch-all cause of action for discrimination based on appearance, size, and any number of other things far removed from the reasons the statutes were passed. *See Tudyman,* 608 F.Supp. at 746. Francis alleges only that Meriden regarded him as disabled because it disciplined him for failing to meet a weight standard applied to all of its employees. He does not claim that Meriden disciplined him because it perceived him as suffering from a physiological weight-related disorder. Accordingly, because Francis has not alleged that he has a physical impairment within the meaning of the ADA or the RHA, or that his employer believed that his weight condition constituted the kind of physical impairment covered by the acts, we affirm the dismissal of his complaint.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.