**Douglas W. MANZ, Plaintiff–Appellant,**

v.

**Robert J. GAFFNEY, John B. Wingate and County of Suffolk, Defendants–Appellees.**

**Docket No. 02–7756.**

United States Court of Appeals, Second Circuit.

Feb. 24, 2003.

Raymond Nardo, Mineola, NY, for Appellant.

Diane Leonardo Beckmann, Hauppauge, NY, for Appellees.

Present: JACOBS, POOLER, and SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and it hereby is **AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

Manz appeals from the District Court's grant of defendants-appellees' motion for summary judgment dismissing his claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. Section 1201 *et seq.*, and the Rehabilitation Act, 29 U.S.C. Section 794, and declining to exercise supplemental jurisdiction over his claims under New York Human Rights Law, Executive Law Section 296. We affirm in part and vacate and remand in part to the district court with directions that it make further findings of fact regarding whether defendants-appellees' perceived or regarded Manz as being disabled within the meaning of the ADA.

Manz's eyesight is affected by "ocular albinism." Section 55–a of the New York Civil Service Law authorizes county and municipal governments to set aside certain non-competitive civil service positions to be filled by disabled persons. Manz was certified as being disabled within the terms of Section 55–a and was hired by the Suffolk County Department of Social Services in May 1995 for the position of Examiner I.

In March 1997 Manz took an examination for the position of Caseworker Trainee within the Department of Social Services and scored 95 out of a possible 100 points. It is not disputed that Manz subsequently interviewed for this position on six occasions, but was not hired.

Manz filed the instant lawsuit in December 1999. His complaint alleges discrimination arising from the failure of defendants-appellees to hire him for the position of Caseworker Trainee. In addition, Manz alleges that he was subjected to illegal retaliation in response to his filing of a Notice of Claim pursuant to New York General Municipal Law Section 50–h.

Our review of the District Court's grant of summary judgment is *de novo.* See *Giordano v. City of New York,* 274 F.3d 740, 746 (2d Cir.2001).

To make out a *prima facie* under the ADA, Manz must first demonstrate that he is disabled within the meaning of the statute. *See Heyman v. Queens Village Comm. for Mental Health,* 198 F.3d 68, 72 (2d Cir.1999).[1] The ADA defines disability as "(a) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Manz asserts that he is disabled for the purposes of all three definitions.

In determining whether an individual suffers from a physical or mental impairment according to the ADA's first definition of disability, "it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). While "a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, ... if the impairment is corrected it does not 'substantially limit' a major life activity' " and the person is consequently not disabled within the meaning of the ADA. *Id.,* at 483.

As the District Court correctly found, the record shows that Manz employs cor-

---

1. Because the ADA and the Rehabilitation Act impose virtually identical requirements, we consider Manz's claims under both statutes in tandem. *See Rodriguez v. City of New York,* 197 F.3d 611, 618 (2d Cir.1999), *cert. denied,* 531 U.S. 864, 121 S.Ct. 156, 148 L.Ed.2d 104 (2000).

rective devices that improve his vision to an extent sufficient to preclude a finding that he is disabled within the meaning of the ADA. Specifically, a letter written by Manz's treating ophthalmologist, dated October 17, 2001, plainly states as follows with respect to his condition: "Corrected visual acuities were 20/60 in each eye. Employing telescopic magnification, he is able to see to 20/20.... Reading is not a particular issue for Mr. Manz when employing a high powered reading glass." Manz himself testified in his deposition that he is able to read and that while "it does take me a longer time to read larger documents than it might take someone with normal vision, ... my comprehension is totally unaffected by that." A subsequent letter from Manz's ophthalmologist characterizes these corrective measures as resulting in merely "an artificial improvement." The District Court, however, correctly held that this characterization is "without meaning" for the purposes of determining whether an individual is disabled within the meaning of the ADA because the *result* of Manz's use of corrective measures is that his vision is improved to 20/20.

With regard to the ADA's second definition of disability, Manz argues that he has established a record of impairment within the meaning of the ADA because (1) he was certified as disabled pursuant to Section 55–a of the New York Civil Service Law; (2) when he took a position with the Suffolk County Department of Probation in April 2000 as a Probation Officer, the New York State Department of Probation determined that his visual handicap warranted a waiver of the requirement that he carry a firearm; and (3) the defendants-appellees themselves undertook to provide Manz with "[v]isual aids enhancement for the computer" in order to accommodate his handicap. However, as the District Court correctly held, this does not estab-

lish a record of impairment because the record proffered by Manz "must be one that shows an impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough." *Colwell v. Suffolk Cty. Police Dept.*, 158 F.3d 635, 645 (2d Cir.1998). Manz has not established that either of the determinations regarding him as disabled reached this conclusion in a manner that would satisfy the ADA's definition of disability.

We are concerned, however, that the District Court did not make a sufficiently distinct determination as to whether Manz is disabled within the meaning of the ADA because the defendants-appellees perceived him as such. Unlike the determination of whether Manz has a recorded disability, this third definition of disability under the ADA " 'turns on the employer's perception of the employee' and is therefore 'a question of intent, not whether the employee has a disability.' " *Colwell v. Suffolk Cty. Police Dept.*, 158 F.3d at 646 (quoting *Francis v. City of Meriden*, 129 F.3d 281, 284 (2d Cir.1997)). "It is not enough, however, that the employer regarded [an] individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled *within the meaning of the ADA*." that is, having an impairment that substantially limits a major life activity. *Id.* (emphasis in original).

The District Court noted that there are "numerous references" in Manz's "employment files using the words 'disabled' or 'accommodation.' " But the District Court also concluded without explanation that these references "merely document [Manz's] precise visual condition ... they do not document a disability that substantially limits a major life activity." The issue with respect to the perceived defini-

tion of disability is whether these references, coupled with the other evidence that Manz provides, is sufficient for a reasonable juror to find that defendants-appellees perceived Manz as substantially limited in a major life activity, not whether the references document an actual disability within the meaning of the ADA. The District Court did not consider this issue fully. We therefore remand for a determination whether Manz raises a triable issue of fact as to whether defendants-appellees regarded Manz as being disabled within the meaning of the ADA.

We affirm the District Court's ruling that Manz has failed to raise a triable issue of fact on his claim of retaliation under the ADA. As the District Court correctly found, Manz has not supported his claim that he suffered any adverse employment actions as a result of his filing a discrimination complaint; rather, any alleged adverse actions taken after the complaint was filed were consistent with actions taken before the filings and therefore cannot satisfy a claim of retaliation. *See Slattery v. Swiss Reinsurance America Corp.,* 248 F.3d 87, 95 (2d Cir.), *cert. denied,* 534 U.S. 951, 122 S.Ct. 348, 151 L.Ed.2d 263 (2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby **AFFIRMED IN PART AND VACATED AND REMANDED** for further factual findings in accordance with this order.

* The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.