OP 11-0463

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 147

BNSF RAILWAY COMPANY,
a Delaware Corporation,

        Petitioner,

    v.

ERIC FEIT,

        Respondent

APPEAL FROM:    Certified Question, United States District Court,
District of Montana, Helena Division, Cause No. CV 10-54-H-DWM
Honorable Donald W. Molloy, Presiding Judge

COUNSEL OF RECORD:

      For Petitioner:

           Bryan Neal (argued), Jeff Hedger, Benjamin O. Rechtfertig; Hedger
Friend, P.L.L.C.; Billings, Montana

      For Respondent:

           Terry N. Trieweiler (argued); Trieweiler Law Firm; Whitefish, Montana

Argued and Submitted:  March 14, 2012
Decided:  July 6, 2012

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The United States District Court for the District of Montana, Helena Division, the Honorable Donald W. Molloy presiding, certified the following question to this Court:

¶2 *Is obesity that is not the symptom of a physiological condition a "physical or mental impairment" as it is used in Montana Code Annotated § 49-2-101(19)(a)?*

¶3 We accepted the certified question and now answer with a qualified "yes."

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 On February 27, 2009, Eric Feit filed an administrative complaint with the Montana Department of Labor and Industry (Department) alleging that Burlington Northern Santa Fe Railway Company (BNSF) illegally discriminated against him because of perceived disability—obesity. In an order dated March 10, 2010, a hearing officer for the Department entered summary disposition in favor of Feit, concluding that "BNSF engaged in and is liable for a discriminatory refusal to hire Feit because it regarded him as disabled" and awarded damages for lost wages and benefits, prejudgment interest, and emotional distress. BNSF filed an appeal with the Montana Human Rights Commission, which issued an order on December 6, 2010, affirming the Department's decision. BNSF then petitioned the U.S. District Court to review whether it violated the Montana Human Rights Act (MHRA) by refusing to hire Feit because of his obesity. Both parties filed motions for summary judgment, at which time the U.S. District Court certified its question to this Court.

2

¶5 In accordance with M. R. App. P. 15(6)(b), the U.S. District Court certified the following facts:

1. BNSF offered Eric Feit a conditional offer of employment as a conductor trainee. The employment was conditioned upon successful completion of a physical examination, drug screening, background investigation, proof of employment eligibility, and BNSF's Medical History Questionnaire.
2. On February 6, 2008, BNSF informed Feit he was not qualified for his "safety sensitive" position because of the "significant health and safety risks associated with extreme obesity."
3. BNSF told Feit he would not be considered for the job unless he either lost 10% of his body weight, or successfully completed additional physical examinations at his own expense. Regardless of the test results, BNSF did not guarantee Feit a job.
4. With the exception of a sleep study test, Feit successfully completed the additional physical exams BNSF requested. The sleep test cost at least $1,800, and Feit could not afford the test.
5. Because BNSF informed Feit that it would not consider him for the conductor trainee position unless he completed the sleep study, Feit set out to lose 10% of his weight.
6. A genuine dispute exists regarding whether BNSF received documentation of Feit's weight loss.
7. On February 27, 2009, Feit filed a complaint with the Montana Department of Labor and charged BNSF [with] discriminating against him based on a physical or mental disability.

## STANDARD OF REVIEW

¶6 "Under M. R. App. P. 15(3), this Court may answer a question of law certified to it by another qualifying court. Our review, therefore, is purely an interpretation of the law as applied to the agreed facts underlying the action." *State Farm Fire & Cas. Co. v. Bush Hog, LLC*, 2009 MT 349, ¶ 4, 353 Mont. 173, 219 P.3d 1249.

## DISCUSSION

¶7 This case requires the Court to answer the narrow question posed. It is not the job of this Court to determine questions of fact or to apply the law to the facts presented to us. In his brief, Feit requests that we reformulate the certified question. Although this Court may reformulate a certified question under M. R. App. P. 15(4), Feit's proffered reformulation essentially asks us to resolve the ultimate issue in his dispute with BNSF, which we decline to do. Further, Feit asks the Court to consider facts outside those certified by the U.S. District Court in its order. This Court's August 16, 2011 order accepting the certified question did so "as formulated on the relevant facts set forth in Judge Molloy's certification of the question" and we find it unnecessary to consider information outside that statement of facts.

¶8 The MHRA makes it unlawful for an employer to refuse employment to a person because of "physical or mental disability . . . when the reasonable demands of the position do not require a[] . . . physical or mental disability . . . distinction." Section 49-2-303(1)(a), MCA. A "physical or mental disability" is defined as:

> (i) *a physical or mental impairment* that substantially limits one or more of a person's major life activities;
> (ii) a record of such an impairment; or
> (iii) a condition regarded as such an impairment.

Section 49-2-101(19)(a), MCA (emphasis added). The U.S. District Court's question asks us specifically to analyze "physical or mental impairment," not the broader definition of disability. As Judge Molloy observed, this Court has not had occasion to interpret the meaning of the term "impairment." To construe this Montana statute, we

4

look to guidance from federal discrimination law under the Americans with Disabilities Act (ADA). *McDonald v. Dept. of Envtl. Quality*, 2009 MT 209, ¶ 39, n. 4, 351 Mont. 243, 214 P.3d 749; *Campbell v. Garden City Plumbing & Heating, Inc.*, 2004 MT 231, ¶¶ 12-14, 322 Mont. 434, 97 P.3d 546; *Pannoni v. Bd. of Trustees*, 2004 MT 130, ¶ 28, 321 Mont. 311, 90 P.3d 438. The Montana Legislature has indicated its clear intent that the MHRA be interpreted consistently with federal discrimination statutes and case law. In particular, the definition of physical or mental disability is substantially identical to that in the ADA. 42 U.S.C. § 12102. And the preamble to the 1991 amendments to the MHRA states that the "definitions previously adopted lack clarity and are inconsistent with definitions used in federal civil rights statutes and court interpretations on the subject." 1991 Mont. Laws ch. 241, 551. We turn, therefore, to federal law and interpretation of it to inform our analysis.

¶9 We have relied on federal case law as well as the federal Equal Employment Opportunity Commission (EEOC) regulations and interpretive guidelines in construing Montana's discrimination laws. *Butterfield v. Sidney Pub. Schs.*, 2001 MT 177, ¶¶ 21, 23, 306 Mont. 179, 32 P.3d 1243; *Reeves v. Dairy Queen, Inc.*, 1998 MT 13, ¶¶ 23-25, 287 Mont. 196, 953 P.2d 703; *Hafner v. Conoco, Inc.*, 268 Mont. 396, 402, 886 P.2d 947, 950-51 (1994). An interpretation of federal law by the federal agency that administers it is afforded great deference. *Sleath v. West Mont Home Health Servs.*, 2000 MT 381, ¶ 37, 304 Mont. 1, 16 P.3d 1042 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782 (1984)).

5

¶10   Congress recently amended the ADA by passing the ADA Amendments Act of 2008 (ADAAA).  ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008).  Congress amended specific provisions of the ADA not relevant here, but in so doing, also affirmed the purpose of the ADAAA to reinstate "a broad scope of protection to be available under the ADA," and clarified its intention that "the definition of disability . . . shall be construed in favor of broad coverage . . . to the maximum extent permitted" by the terms of the Act.  122 Stat. at 3554-55; *see also* 29 C.F.R. § 1630.1(c)(4) (2011).  The ADAAA provides: "Congress finds that [federal cases] have narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect."  While the legislative history suggests that Congress did not expect the EEOC's current regulatory definition of these terms to change (29 C.F.R. pt. 1630 app. § 1630.2(h) (2011)), Congress did express its specific intent that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."  122 Stat. at 3553-54.  Notably, Congress did not amend the substantive definition of "disability" in the federal Act, except to add new subparagraphs clarifying the definitions of "major life activities" and "regarded as having such an impairment." 42 U.S.C. § 12102(2), (3).  Thus, insofar as they are relevant to the certified question, the Montana and federal definitions of "disability" remain substantively identical despite the passage of the ADAAA.

6

¶11    Neither the original ADA nor the ADAAA defines "physical or mental impairment." The EEOC defines "impairment" as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1) (2011). The EEOC regulations in this context define "impairment" in the same manner as those in place prior to the ADAAA, with the addition of two body systems (circulatory and immune). *Compare* 29 C.F.R. § 1630.2(h)(1) (2011) *with* 34 C.F.R. § 104.3(j)(2)(i) (2011); Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630 app. § 1630.2(h) (2011).

¶12    The EEOC's Interpretive Guidance distinguishes between conditions that are impairments and conditions that are simply physical characteristics: "The definition of the term 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within 'normal' range and are not the result of a physiological disorder." 29 C.F.R. pt. 1630 app. § 1630.2(h) (2011). The Interpretive Guidance thus suggests that "impairment" requires a "physiological disorder" only if a person's weight is "*within 'normal' range*." By using the conjunctive "*and*," the regulation excludes weight from the definition of impairment only if it is *both* "within 'normal' range" *and* "not the result of a physiological disorder." BNSF points out that most federal courts to have considered the issue have held that

7

obesity is not an impairment unless it is the result of a physiological disorder or condition. *See EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 443 (6th Cir. 2006) (holding "to constitute an ADA impairment, a person's obesity, even morbid obesity, must be the result of a physiological condition"); *Andrews v. Ohio*, 104 F.3d 803, 810 (6th Cir. 1997) (holding the charging parties had not demonstrated their weight was the result of a physiological condition under the ADA and affirming a motion to dismiss their claims); *Francis v. City of Meriden*, 129 F.3d 281, 286-87 (2d Cir. 1997) (holding that physical characteristics, such as weight, that do not result from a physiological disorder are not considered "impairments"). These courts have held that "physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or perceived disability." *Watkins Motor Lines, Inc.*, 463 F.3d at 442 (quoting *Andrews*, 104 F.3d at 808-09). BNSF urges us to follow this line of cases and answer the certified question in the negative. However, the cases on which BNSF relies all were decided before passage of the ADAAA. In that Act, Congress instructed the courts they were interpreting the statute too restrictively and expressed its specific intent that determination of disability not demand extensive analysis. 122 Stat. at 3553-54.

¶13    The EEOC's Compliance Manual, interpretations of the law for EEOC employees charged with investigating discrimination claims, states: "[N]ormal deviations in height, weight, or strength that are not the result of a physiological disorder are not impairments. . . . . At extremes, however, such deviations may constitute impairments." *EEOC*

*Compliance Manual* § 902.2(c)(5), http://www.eeoc.gov/policy/docs/ 902cm.html#902.2c5 (accessed on June 28, 2012) (citations omitted). The Compliance Manual was last updated on November 21, 2009, subsequent to the passage and effective date of the ADAAA. Although the Compliance Manual has not been formally adopted and made part of the Code of Federal Regulations, it does provide insight into the agency's interpretation. The United States Supreme Court has expressly recognized the usefulness of the EEOC Compliance Manual. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399, 128 S. Ct. 1147, 1156 (2008) (citing cases and noting the EEOC's compliance manuals, though not binding on the courts, "reflect 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance'"). This Court affords an agency's interpretation of its rule "great weight" and defers to that interpretation unless "plainly inconsistent" with the spirit of the rule. *Easy v. Mont. Dept. of Nat. Resources & Conserv.*, 231 Mont. 306, 309, 752 P.2d 746, 748 (1988) (affirming a state agency's interpretation of its hiring policy).

¶14 While the EEOC notes that "being overweight, in and of itself" is generally not an impairment, "severe obesity, which has been defined as body weight more than 100% over the norm . . . is clearly an impairment." *EEOC Compliance Manual* § 902.2(c)(5)(ii). The EEOC's interpretation supports a conclusion that weight outside "normal range" may constitute a physiological condition within the definition of impairment if it "affects one or more body systems." This conclusion recently has been adopted by some federal courts. *See EEOC v. Resources for Human Dev., Inc.*, 827 F.

9

Supp. 2d 688, 694 (E.D. La. 2011) (concluding, in reliance on the EEOC Compliance Manual, that "if a charging party's weight is outside the normal range—that is, if the charging party is severely obese—there is no explicit requirement that obesity be based on a physiological impairment"); *Lowe v. American Eurocopter, LLC*, 2010 U.S. Dist. LEXIS 133343, \*\* 23, 25 (N.D. Miss. Dec. 16, 2010) (denying motion to dismiss plaintiff's ADA claim, noting the "substantial expansion of the ADA by the ADAAA" and stating cases requiring that obesity be a product of a physiological condition "were all before the ADAAA took effect"); *but see Lescoe v. Pa. Dept. of Corrects.*, 2011 U.S. Dist. LEXIS 34325, \*\*10-13 (M.D. Pa. March 30, 2011) (upholding summary judgment in favor of the defendant on an ADA claim because plaintiff had not demonstrated his obesity was a physical or mental impairment, but not addressing the ADAAA). As noted in the EEOC Compliance Manual, "[t]he mere presence of an impairment does not automatically mean that an individual has a disability. Whether severe obesity rises to the level of a disability will turn on whether the obesity substantially limits, has substantially limited, or is regarded as substantially limiting, a major life activity." *EEOC Compliance Manual* § 902.2(c)(5)(ii) n. 16;[1] *see also Sibilla v. Follett Corp.*, 2012 U.S. Dist. LEXIS 46255, \*26 (E.D.N.Y. March 30, 2012) (even under the ADAAA, "[t]he fact that an employer regards an employee as obese or overweight does not

---

[1] It appears this statement has not been updated since adoption of the ADAAA. Under the amendments, an individual meets the requirement of "being regarded as having such an impairment" by establishing that he or she has been subjected to discrimination "because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*." 42 U.S.C. § 12102(3)(A) (emphasis added).

10

necessarily mean that the employer regards the employee as suffering a physical impairment."). Prior to the ADAAA, the EEOC's Interpretive Guidance included the statement that, "except in rare circumstances, obesity is not considered a disabling impairment." 29 C.F.R. pt. 1630 app. § 1630.2(j) (2008). Notably, this language has been omitted from the 2011 version.

¶15 BNSF argues that Montana has not expressly adopted the statutory changes contained in the ADAAA, and therefore, we should not consider the federal amendments or the EEOC's interpretations thereof. Moreover, BNSF contends the ADAAA is not retroactive and therefore interpretation of it is not applicable here, citing *Becerril v. Pima Co. Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009), for the proposition that Congress did not intend the ADAAA to apply retroactively. These arguments overlook the point that we are interpreting Montana statutes, not the ADAAA, and that we are construing "impairment" for the first time. They further overlook the fact that the definition of "disability" was not substantively amended with respect to the meaning of "impairment." Our prior case law directs us to use federal interpretations as guidance, without confining our review to authority in place on the date the MHRA was first enacted. *Hafner*, 268 Mont. at 402, 886 P.2d at 951 (stating the MHRA is "patterned after" federal law and referencing federal case law decided after the passage of the MHRA); *McDonald*, ¶ 39 (citing current federal regulations). Our use of contemporaneous federal interpretations is therefore appropriate as it fulfills the legislature's directive that Montana law be interpreted consistently with federal

discrimination laws. BNSF acknowledged during oral argument that this Court is not applying the ADAAA here. Thus, we are not giving retroactive effect to a federal statute whose application is expressly prospective. Rather, given the development of the law, we construe Montana's act in a manner that comports with stated congressional intent.

¶16   Taken together, the ADA, ADAAA, and the EEOC's interpretation are clear and provide persuasive guidance in interpreting the MHRA. Based on the foregoing, we answer the certified question as follows: Obesity that is not the symptom of a physiological disorder or condition may constitute a "physical or mental impairment" within the meaning of Montana Code Annotated § 49-2-101(19)(a) if the individual's weight is outside "normal range" and affects "one or more body systems" as defined in 29 C.F.R. § 1630.2(h)(1) (2011).


/S/ BETH BAKER

We concur:

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER


Justice Brian Morris, dissenting.

¶17   The United States District Court has asked us, in effect, to define "physical or mental impairment" as used in the MHRA. I agree with the Court that we must turn to federal law to guide us. Opinion, ¶ 8. Luck would have it that the EEOC—the federal commission responsible for enforcing the ADA—has created a regulatory definition that defines "physical or mental

12

impairment." 29 C.F.R. 1630.2(h)(1). This definition provides, in pertinent part, that "physical or mental impairment" includes "any physiological disorder, or condition" that affects a major system of the human body. 29 C.F.R. 1630.2(h)(1).

¶18     A plain reading of this definition demonstrates that a physiological condition or disorder must affect a bodily system before a person possesses a physical or mental impairment. Thus, a physiological condition must be present before an impairment exists. Obesity accordingly cannot fall within this definition when it does not occur secondarily to a physiological condition or disorder.

¶19     The interpretative guidance that accompanies the definition supports this reading. The "definition of the term 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within 'normal' range *and* are not the result of a physiological disorder." 29 C.F.R. Pt. 1630, App. § 1630.2(h) (emphasis added). The Court construes this statement to mean "that 'impairment' requires a 'physiological disorder' only if a person's weight is 'within normal range.'" Opinion, ¶ 12. This construction ignores the conjunctive nature of the interpretative guidance. The guidance plainly provides that a person's weight qualifies as an impairment only if it falls outside the normal range AND occurs as the result of a physiological disorder. Both requirements must be satisfied before an impairment can be found. The Court's interpretation would be accurate only if the interpretative guidance provided that physical characteristics should not be considered impairments if the characteristics "are within the 'normal' range *or* are not the result of a physiological disorder." The EEOC did not write the guidance in the disjunctive.

¶20     Indeed, a reading of the definition's entire interpretative guidance demonstrates that a physiological disorder or condition represents a threshold issue for determining whether an

13

impairment exists.  For example, the guidance provides that "other conditions, such as pregnancy, that are *not the result of a physiological disorder* are also not impairments." 29 C.F.R. Pt. 1630, App. § 1630.2(h) (emphasis added).  Similarly, the guidance notes that "[t]he definition of an impairment also does not include common personality traits such as poor judgment or a quick temper where these *are not symptoms of a mental or psychological disorder.*" 29 C.F.R. Pt. 1630, App. § 1630.2(h) (emphasis added).  The guidance, as a whole, makes clear that a physiological condition or disorder must be present before an impairment exists.

¶21    Numerous courts have agreed that obesity must be caused by a physiological disorder or condition before it may be considered an impairment.  The Sixth Circuit specifically rejected the notion that weight outside the normal limit may constitute a physical impairment absent a physiological condition.  *EEOC v. Watkins Motor Lines, Inc*., 463 F.3d 436, 442-43 (6th Cir. 2006).  Obesity must be secondary to a physiological disorder or condition before it may be considered an impairment.  *Watkins Motor Lines, Inc.*, 463 F.3d at 442-43.  The court further noted that to conclude that abnormal weight not secondary to a physiological condition constitutes an impairment would require the court to determine that "any physical abnormality . . . may be an ADA impairment." *Watkins Motor Lines, Inc.*, 463 F.3d at 443.

¶22    The Second Circuit similarly agreed that obesity, by itself, does not qualify as an impairment because "physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or perceived disability." *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997). Courts from other jurisdictions that have interpreted similar definitions of impairment conclude that obesity does not qualify as an impairment unless it occurs secondary to a physiological condition.  *Civil*

14

*Service Commn. of City of Pittsburg v. Penn. Human Relations Commn.*, 591 A.2d 281, 322-23 (Pa. 1991); *Cassista v. Community Foods, Inc.*, 856 P.2d 1143, 1152 (Cal. 1993). These cases stand for the proposition that a protected disability must be more than a physical characteristic. The presence of this physiological disorder or condition distinguishes a disability from a mere physical characteristic.

¶23    The Court dismisses this reasoning based on the fact that the ADAAA has superceded these decisions. Opinion, ¶ 12. The ADAAA requires broad construction of disability. Yet, the ADAAA has no effect with regard to the definition of "physical or mental impairment." The EEOC expressly noted that it made no change to its definition of "physical or mental impairment" because "the legislative history of the Amendments Act notes that Congress 'expects that the current regulatory definition of [physical or mental impairment] . . . will not change.'" 29 C.F.R. Pt. 1630, App. § 1630.2(h). Accordingly, the ADAAA's directive for a broad construction of disability provides no justification to ignore the definition's plain language or to ignore previous cases interpreting the definition.

¶24    The ADAAA's effect on the definition is further borne out through the EEOC's response to the ADAAA. For example, the EEOC made no substantive modification to its "physical and mental impairment" definition following the enactment of the ADAAA. 29 C.F.R. § 1630.2(h)(1) (2008); *compare* 29 C.F.R. § 1630.2(h)(1) (2011). In particular, the EEOC definition still retains the physiological disorder or condition requirement. 29 C.F.R. § 1630.2(h)(1).

¶25    By contrast, the EEOC substantively modified its definition for the two other elements of a disability in light of the ADAAA. 29 C.F.R. § 1630.2(j) (2008), *compare* 29 C.F.R. § 1630.2(j) (2011); 29 C.F.R. § 1630.2(i)(2008), *compare* 29 C.F.R. § 1630.2(i) (2011). The

15

EEOC modified "substantially limits" by instructing that term must be "construed broadly in favor of expansive coverage . . ." and that the standard "is not meant to be demanding. . . ." 29 C.F.R. § 1630.2(j)(1)(i). The EEOC further made clear that "substantially limits" does not require that an impairment "prevent, or significantly or severely restrict, the individual from performing a major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). This modification represents a complete reversal of the "substantially limits" definition pre-ADAAA.

¶26    The EEOC also substantively modified its definition of "major life activity." The list previously included only physical activity. 29 C.F.R. § 1630.2(i) (2008). The EEOC now has modified the list of major life activity to include non-physical activities such as "speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working . . . ." 29 C.F.R. § 1630.2(i)(1)(i). The EEOC further directed that "major life activity" "shall not be interpreted strictly to create a demanding standard for disability." 29 C.F.R. 1630.2(i)(2).

¶27    These modifications reflect the full extent of EEOC's response to the ADAAA. The EEOC now instructs that "major life activity" and "substantially limits" shall be construed broadly. The EEOC made no similar modifications regarding the need to construe broadly the definition of a "physical or mental impairment." The EEOC clearly determined that the ADAAA imposed no changes to its definition of "physical or mental impairment" and imposed no adjustments to how this phrase should be interpreted.

¶28    Congress's action, in addition to the previously mentioned legislative history, further supports the notion that the ADAAA has no effect on the physiological condition requirement for impairment. Congress specifically directed the EEOC in the ADAAA to change its definition of "substantially limits." ADAAA, P.L. 110-325, § 2(a)(8). Congress included nothing in the

ADAAA, however, regarding any need to revise the EEOC's regulatory definition of "physical or mental impairment." Congress did not direct the EEOC to eliminate the physiological condition or disorder requirement of that definition.

¶29 Indeed, Congress conveyed its intent in the ADAAA that "whether an individual's impairment is a disability under the ADA should not demand extensive analysis." ADAAA, P.L. 110-325, § 2(b)(5). This stated purpose presumes that the individual actually possesses an impairment, and leads to the suggestion that broad construction applies only with regard to whether that actual impairment constitutes a disability. Congress specifically noted in the ADAAA its disagreement with the United States Supreme Court's determination that the terms "substantially limits" and "major life activity" should be construed strictly. ADAAA, P.L. 110-325, § 2(b)(4). Congress made no statement whatsoever with regard to how to interpret "physical or mental impairment."

¶30 I disagree with the Court's determination that obesity may be considered an impairment when it occurs without an accompanying physiological condition or disorder. The EEOC regulatory definition requires that a physiological disorder or condition must be present for an impairment to exist. The EEOC did nothing to modify this definition in response to ADAAA. Congress included no directive to the EEOC in the ADAAA to modify its definition of a physical or mental impairment. These factors persuade me to answer the certified question no. I dissent.

/S/ BRIAN MORRIS

Chief Justice Mike McGrath joins in the dissenting Opinion of Justice Morris.

/S/ MIKE McGRATH

17

Justice Jim Rice, dissenting.

¶31 I would answer the certified question "no"—obesity that is not a symptom of a physiological condition is not a "physical or mental impairment" as the term is used in § 49-2-101(19)(a), MCA. I believe the Court's analysis is flawed because it is premised upon post-event congressional amendments to the ADA that have not been incorporated by the Montana Legislature into the Montana Human Rights Act, rather than the federal court precedent that should guide our decision.

¶32 The seven statements of undisputed fact from the U.S. District Court upon which we are to base our answer to the certified question indicate that the alleged discriminatory conduct occurred in 2008. "On February 6, 2008, BNSF informed Feit he was not qualified for his 'safety sensitive' position because of the 'significant health and safety risks associated with extreme obesity.'" Finding of Fact 2. BNSF thereafter suggested that Feit could pursue certain additional options, such as losing weight, but, even so, BNSF did not guarantee a position to Feit if he successfully completed these options.

¶33 The ADAAA did not become effective until January 1, 2009. Pub. L. No. 110-325, 122 Stat. 3553, § 8 (2008). "'We determine the substantive rights between the parties according to the law in effect at the date of injury.'" *Griffith v. Butte Sch. Dist. No. 1*, 2010 MT 246, ¶ 26, 358 Mont. 193, 244 P.3d 321 (quoting *Boettcher v. Mont. Guar. Fund*, 2007 MT 69, ¶ 14, 336 Mont. 393, 154 P.3d 629 (citation omitted)); *see also Anderson v. Werner Enters.*, 1998 MT 333, ¶ 28, 292 Mont. 284, 972 P.2d 806 ("we

17

adhere to the rule that the substantive rights between parties to an action are determined by the law in effect on the date of the injury . . . . Further, a statute will not be applied retroactively unless the legislature clearly expressed an intention to so apply it."). Federal courts addressing ADA claims have held likewise. *See Hill v. Verizon Md., Inc.*, 2009 U.S. Dist. LEXIS 59786 *23, n. 9 (D. Md. July 13, 2009) ("The amendments to the ADA are not effective until January 9, 2009, and the Court must use the laws and interpretations of those laws in effect at the time of the complained-of actions."). To impose liability upon a party based upon law not in effect at the time of the party's actions violates this principle and raises questions of fundamental fairness. While a legislature may intend legislation to be retroactively applied, *see U.S. v. Juvenile Male*, 2011 MT 104, ¶ 7, 360 Mont. 317, 255 P.3d 110, Congress did not intend so here. In response to BNSF's citation to federal authority holding that the ADAAA was not intended to operate retroactively, the Court dismisses the argument because it "overlook[s] the point that we are interpreting Montana statutes, not the ADAAA." Opinion, ¶ 14. However, we should not be retroactively applying ADAAA principles to interpret Montana law governing a 2008, pre-ADAAA claim.

¶34 Further, the Court overlooks the fact that the Montana Legislature has not adopted corresponding changes to the MHRA in the two legislative sessions since enactment of the ADAAA. The Court presumes that because Congress enacted the ADAAA, Montana law necessarily follows, without pausing to consider that our Legislature has not so directed. When Congress revises federal disability discrimination laws, Montana is faced

18

with the question of whether to revise state laws in the same manner. After congressional passage of the ADA, the Montana Legislature saw fit in 1991 to make corresponding changes in the MHRA, including adding the requirement of "reasonable accommodations" and updating the definition of "physical or mental handicap." *See* Mont. H.B. 389, 52d Legis., Reg. Sess.; Laws of Montana, 1991, ch. 241, 551. The preamble to H.B. 389 explained that the then-current definitions of physical and mental handicap in state law "lack[ed] clarity and are inconsistent with definitions used in federal civil rights statutes and court interpretations on the subject." Again, in 1993, the Montana Legislature elected to follow the lead of Congress by exchanging the concept of "handicap" within the MHRA for the concept of "disability." *See* Mont. H.B. 496, 53rd Legis., Reg. Sess.; Laws of Montana, 1993, ch. 407, 1374. The preamble to H.B. 496 explained that "making the state human rights laws consistent with the Americans with Disabilities Act will eliminate some confusion between state and federal laws." Laws of Montana, 1993, ch. 407, at 1375. Rep. Diana Wyatt, sponsor of the bill, commented in her opening statement that "[t]he purpose of HB 496 is to update terminology used in the Montana Human Rights Law so it is consistent with the terminology used in the Americans with Disabilities Act (ADA)." Mont. S. Comm. on Jud., *Minutes of the Hearing on H. Bill 496*, 53rd Legis., Reg. Sess. 2 (March 12, 1993).

¶35 However, the Montana Legislature has not yet enacted corresponding revisions to the MHRA based upon the ADAAA. "[T]he Legislature is presumed to act with deliberation and with full knowledge of all existing laws on a subject." *Mont. Sports*

*Shooting Assn. v. State*, 2008 MT 190, ¶ 41, 344 Mont. 1, 185 P.3d 1003 (citing *Ross v. City of Great Falls*, 1998 MT 276, ¶ 17, 291 Mont. 377, 967 P.2d 1103). "Moreover, in construing a statute, our job 'is simply to ascertain and decide what is in terms or in substance contained therein, not to insert what has been omitted . . . .' Section 1-2-101, MCA." *Hunter v. City of Great Falls*, 2002 MT 331, ¶ 14, 313 Mont. 231, 61 P.3d 764. I believe the Court impinges upon legislative prerogative by conforming state law to the ADAAA before the Legislature has spoken.

¶36 Consequently, I would look to federal jurisprudence under the ADA for guidance in applying the MHRA to a 2008 claim. I first note that the pertinent language of the ADA and the MHRA are virtually identical. *Compare* § 49-2-101(19)(a), MCA, defining "physical or mental disability" as: "(i) a physical or mental impairment that substantially limits one or more of a person's major life activities; (ii) a record of such an impairment; or (iii) a condition regarded as such a impairment;" *with* 42 U.S.C. 12102(2), defining "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." Further, when interpreting the term "physical or mental impairment," federal courts have unfailingly required that obesity be caused by a physiological condition to qualify as a disability.

¶37 In *Andrews v. Ohio*, 104 F.3d 803 (6th Cir. 1997), state troopers alleged under the ADA that the state perceived them as being disabled because they exceeded Ohio's mandatory weight limits for law enforcement officers. *Andrews*, 104 F.3d at 805. Citing

20

29 C.F.R. § 1630.2(h), the 6th Circuit Court of Appeals held that "physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or perceived disability." *Andrews*, 104 F.3d at 808.[1]  In *Francis v. City of Meriden*, 129 F.3d 281 (2d Cir. 1997), the plaintiff was disciplined by the City for exceeding the fire department's weight requirements and alleged that the City perceived him as having a disability based solely on his weight, despite his ability to perform his job duties. *Francis*, 129 F.3d at 282.  The 2nd Circuit Court of Appeals held that the physical characteristic of weight, not the result of a physiological disorder, was not considered an "impairment" under the Act. *Francis*, 129 F.3d at 286.  In *Equal Empl. Opportunity Commn. v. Watkins Motor Lines, Inc.*, 463 F.3d

---

[1] 2008 EEOC regulations similarly defined "physical or mental impairment" as:

> (1) *Any physiological disorder, or condition*, cosmetic disfigurement, or anatomical loss affecting one or more of the following systems:  neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h) (2008) (emphasis added).  EEOC's Compliance Manual distinguishes "impairments" from "characteristics," stating:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural and economic characteristics that are not impairments.  The definition of the term 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within 'normal' range *and are not the result of a physiological disorder*.

29 C.F.R. § 1630.2(h) Appx. (2008) (emphasis added).

21

436 (6th Cir. 2006), the 6th Circuit Court of Appeals held "to constitute an ADA impairment, a person's obesity, even morbid obesity, must be the result of a physiological condition." *Watkins*, 463 F.3d at 443. Consistent with these holdings, the 1st Circuit Court of Appeals, in *Cook v. R.I., Dept. of Health*, 10 F.3d 17 (1st Cir. 1993), held that a morbidly obese woman was disabled after she presented evidence that her obesity was caused by a physiological disorder. *Cook*, 10 F.3d at 23-25.

¶38    Numerous federal district court decisions have reached the same conclusion. In a notable recent case, the plaintiff was diagnosed as morbidly obese and brought claims under the ADA against his employer for demoting him and reducing his pay because of the employer's perception that the plaintiff could no longer perform his job duties, and for failing to provide reasonable accommodation. *Hill*, 2009 U.S. Dist. LEXIS 59786 at *9-10. There was "no evidence suggesting that Mr. Hill suffered from an underlying physiological condition or disorder." *Hill*, 2009 U.S. Dist. LEXIS 59786 at *10. In denying the claim, the federal district court, quoting the 4th Circuit Court of Appeals, observed that "the case law and the regulations both point *unrelentingly* to the conclusion that a claim based on obesity is not likely to succeed under the ADA," and concluded that "the case law and regulations weigh heavily against a determination that obesity constitutes a disability." *Hill*, 2009 U.S. Dist. LEXIS 59786 at *17-18 (quoting *Torcasio v. Murray*, 57 F.3d 1340, 1354 (4th Cir. 1995); *Smaw v. Commw. of Va. Dept. of State Police*, 862 F. Supp 1469, 1472 (E.D. Va. 1994)) (emphasis added).

22

¶39 BNSF is entitled to be judged under the law that governed alleged discriminatory conduct in 2008. Looking to the appropriate federal jurisprudence for guidance in applying state law to this particular claim, the very strong rule across the federal circuits is that obesity that is not the result of a physiological condition is not a "physical impairment." I would thus answer the certified question "no."

/S/ JIM RICE